## YOUNG v. COMMONWEALTH.

Court of Appeals of Kentucky.

March 27, 1953.

S. M. Ward, and W. M. Melton, Hazard, for appellant.

J. D. Buckman, Jr., Atty. Gen. and W. Owen Keller, Asst. Atty. Gen., for appellee.

SIMS, Chief Justice.

Appellant, Harrison Young, was jointly indicted with Gus and Mallie Young, for the willful murder of Joe Young. Upon a separate trial, Harrison was convicted of voluntary manslaughter and his punishment fixed at confinement in the penitentiary for 21 years. The sole ground upon which he asks that the judgment be reversed is on account of alleged erroneous instructions.

In order to intelligently discuss the instructions it is necessary to give a brief account of the killing. The deceased, Joe Young, was a brother of Harrison, Gus and Chester Young, and Mallie was the wife of Gus. Joe seems to have been unmarried and lived in the home of his deceased parents which was about 75 yards from a house occupied by Chester and his family. The

Commonwealth's proof shows that some time in the late afternoon (the exact hour is in dispute) of August 10, 1949, a "racket" occurred on Joe's porch between him on one side and Harrison, Gus and Mallie on the other. Joe's antagonists had him down, but he got up and started running to Chester's home to get a gun. As Joe ran, Gus shouted, "Let him have it" and Harrison started shooting at Joe with a .22 rifle and Mallie with a .32 pistol. Right before Joe reached the back door of Chester's home a bullet from the .22 rifle entered his back just above the beltline and came out over his heart, which medical testimony showed caused his death. Harrison denied being in the "racket" or that he fired any weapon at Joe. He testified he was friendly with Joe and never had "any trouble with any of them;" that Gus was the person who fired the rifle and it was he (Harrison) who finally got Gus to stop shooting. There is no evidence in the record that Chester was in any way connected with the "racket" on Joe's porch; or in the shooting which resulted in Joe's death. The proof shows that at the time of the shooting, Chester was milking his cow "down around the barn" and "couldn't see who was doing the shooting", but he heard Gus say, "Mallie, you and Harrison, right quick, let him have it before he gets in the house," referring to Joe.

■ The indictment in separate counts charged Harrison, Gus and Mallie as principals, and then charged each with aiding and abetting the other two in the killing of Joe. Complaint is made of the first instruction that it is "double barrelled" in that it authorizes the jury to convict Harrison of murder or of manslaughter as principal if the jury believed beyond a reasonable doubt that he fired the fatal shot, or if it believed beyond a reasonable doubt he aided and abetted Gus or Mallie in so doing, making the proper distinction between murder and manslaughter. Appellant urges that by submitting to the jury in one instruction the question of his guilt as principal or as aider and abettor, the jury was confused. It is not unusual to combine in one instruction the question of accused's guilt as principal and as aider

and abettor. Moore v. Com., 266 Ky. 514, 99 S.W.2d 715, and cases therein cited.

Further complaint is made of the first instruction that in one place it inadvertently used Harrison's name for the name of Gus and told the jury if it believed beyond a reasonable doubt that Harrison or Mallie fired the fatal shot "and that said Harrison Young was present * * * and did willfully and feloniously aid * * * and advise the said Gus Young or the said Mallie Young so to do, then you will find defendant guilty". It is insisted that thereby the instruction authorized the conviction of Harrison if he aided or abetted Gus, although Harrison fired the fatal shot and Gus did not fire it.

The answer to that argument is the instruction must be considered as a whole rather than to read one phrase standing alone. Kelley v. Com., 300 Ky. 136, 187 S.W.2d 796; Brake v. Com., 311 Ky. 436, 224 S.W.2d 698. When the instruction is read as a whole there can be no doubt that it refers to Gus as the principal who fired the shot and to Harrison as the aider and abettor of Gus. It would be unreasonable to construe this instruction as meaning Harrison could aid and abet himself in firing the fatal shot.

■ The next criticism is that the voluntary manslaughter instruction was erroneous as it contained the correlative "or" rather than the conjunctive "and" and read "in sudden heat or passion." Appellant argues this gave the jury the alternative to convict him if the shooting was done in sudden heat or in sudden passion, when the law is they could convict of voluntary manslaughter if the shooting was done "in sudden heat and passion." We think the more accurate phrase is "sudden heat of passion" but in the voluntary manslaughter instruction in this phrase the words "of", "or" and "and" are used interchangeably. See Smith v. Com., 92 S.W. 610, 29 Ky.Law Rep. 231; Cook v. Com., 72 S.W. 283, 24 Ky.Law Rep. 1731; Burnett v. Com., 172 Ky. 397, 189 S.W. 460. The manslaughter instruction given, properly used the correlative "or" between the two phrases "in sudden heat or passion" or "in sudden affray." We have held it to be error to con-

nect these two phrases with the conjunction "and" since murder is reduced to voluntary manslaughter if the killing is done either in sudden affray or in sudden heat and passion, upon provocation reasonably calculated to excite passion beyond control. Stanley's Instructions to Juries § 873 p. 1159; the Smith case and the Burnett cases just cited. Here the court used the expression "upon provocation ordinarily calculated to excite passion beyond control." The manslaughter instruction as given was correct.

 Lastly, it is argued the self-defense instruction is erroneous in that it does not authorize an acquittal if the aiding and abetting was done in self-defense, but limited appellant's right of self-defense to the firing of the fatal shot. Our reply thereto is that the evidence adduced in this record does not authorize a self-defense instruction. Joe was fleeing at the time he was shot and it was not contended by Harrison that he shot him in self-defense. Harrison denied he fired at Joe or at Chester, who was milking and had no part in the difficulty. The self-defense instruction told the jury if Harrison believed and had reasonable grounds to believe that "he and Gus Young and Mallie Young and Joe Young were or that either of them was then and there in danger of death or the infliction of some great bodily harm at the hands of Ches Young and that it was necessary or believed by the said Harrison Young, in the exercise of a reasonable judgment, to be necessary, to shoot, * * Ches Young, in order to avert that danger, real or to to him apparent, and that he then * * * shot at Ches Young and accidently and unintentionally killed Joe Young, then you will find defendant not guilty." There is no evidence whatever in the record before us upon which to base such an instruction. The rule is that the instructions must be based upon the evidence. Young v. Com., Ky., 238 S.W.2d 130; Deaton v. Com., 313 Ky. 769, 233 S.W.2d 533; Simpson v. Com., 313 Ky. 599, 233 S.W.2d 118. As the evidence did not entitle appellant to an instruction on self-defense, he cannot be heard to complain that the in-

struction given did not cover his right of self-defense in aiding and abetting the killer.

Perceiving no error in the record prejudicial to appellant's substantial rights, the judgment is affirmed.