**James S. HAMILTON, Appellant,**

v.

**CSX TRANSPORTATION, INC., Appellee.**

No. 2005–CA–000454–MR.

Court of Appeals of Kentucky.

Nov. 9, 2006.

James L. Hamilton, Jonah Lee Stevens, Pikeville, KY, for appellant.

James E. Cleveland, III, Ashland, KY, Donald H. Combs, Pikeville, KY, for appellee.

Before HENRY and SCHRODER, Judges; EMBERTON,[1] Senior Judge.

## OPINION

HENRY, Judge.

James S. Hamilton appeals from a judgment and jury verdict of the Pike Circuit Court in favor of CSX Transportation, Inc. as to Hamilton's suit under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 *et seq.* Upon review, we reverse and remand for a new trial.

Hamilton began his employment with CSX in 1973 working as a brakeman before later becoming an engineer. His complaint maintained that as a result of the nature of his more than 30 years of employment with CSX at a mine loadout facility, he suffered a number of physical injuries due to repeated exposure to poorly designed locomotives and peculiar loading situations. Hamilton was specifically diagnosed with bilateral carpal tunnel syndrome and an injury to his right shoulder. He has undergone carpal tunnel release surgery on both hands and has been advised that he would benefit from an arthroscopic decompression of his right shoulder.

After extensive discovery, trial commenced on the matter on January 10, 2005, with the case finally being presented to the jury for consideration on January 13, 2005 following a four-day trial. The predomi-

---

1. Senior Judge Thomas D. Emberton, sitting as Special Judge by Assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

nant issues before the jury were whether Hamilton's injuries arose out of his employment with CSX and whether CSX was negligent in failing to provide him with a reasonably safe place to work pursuant to FELA. The jury returned with a verdict in favor of CSX, and on January 24, 2005, the trial court entered a judgment reflecting the jury's decision. Hamilton subsequently filed post-trial motions to amend or vacate the verdict or—in the alternative—to grant a new trial, but those motions were denied by the trial court in a February 23, 2005 order. This appeal followed.

■ On appeal, Hamilton first argues that the instructions tendered to the jury incorrectly stated the law and were confusing, misleading, and biased in favor of CSX. He initially contends that the trial court incorrectly instructed the jury on "causation" under FELA, and that—consequently—it was impossible for the jury to fairly and accurately apply the law in this case. The instruction in question—titled "Interrogatory No. 1"—reads as follows: "Do you believe from the evidence that the Defendant, CSX Transportation, Inc., was negligent and failed to provide the Plaintiff with a reasonably safe place to work, and if so, was that failure a substantial cause of Plaintiff's injuries?" Nine members of the jury answered this question with a "No" and consequently reached a verdict for CSX.

■ Alleged errors regarding jury instructions are considered questions of law that we examine under a *de novo* standard of review. *Reece v. Dixie Warehouse and Cartage Co.*, 188 S.W.3d 440, 449 (Ky.App. 2006). "Instructions must be based upon the evidence and they must properly and intelligibly state the law." *Howard v. Commonwealth*, 618 S.W.2d 177, 178 (Ky. 1981). "The purpose of an instruction is to furnish guidance to the jury in their deliberations and to aid them in arriving at a

correct verdict. If the statements of law contained in the instructions are substantially correct, they will not be condemned as prejudicial unless they are calculated to mislead the jury." *Ballback's Adm'r v. Boland–Maloney Lumber Co.*, 306 Ky. 647, 652–53, 208 S.W.2d 940, 943 (1948).

■ What constitutes "negligence" under FELA "is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept governs." *Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282 (1949). It is well-established that FELA plaintiffs have a lower standard of proof than plaintiffs in ordinary negligence cases. *See Harbin v. Burlington Northern R. Co.*, 921 F.2d 129, 131 (7th Cir.1990). A key difference between a statutory FELA action and a common law negligence action is that in order to satisfy the causation element in a FELA action, a plaintiff need only show that the employer "in whole or in part" caused his or her injury. *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 507, 77 S.Ct. 443, 449, 1 L.Ed.2d 493 (1957). The United States Supreme Court has specifically described the FELA plaintiff's burden as follows: "Under this statute, the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Id.*, 352 U.S. at 506, 77 S.Ct. at 448. Accordingly, FELA actions are "significantly different" from the ordinary negligence claim. *Id.*, 352 U.S. at 509–10, 77 S.Ct. at 450.

■ We further note that "for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the em-

ployer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference." *Id.*, 352 U.S. at 508, 77 S.Ct. at 449. "It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence." *Id.*, 352 U.S. at 506, 77 S.Ct. at 448. As noted by Hamilton, *Rogers* remains the seminal case on causation under FELA, and has been cited to in this context by the U.S. Supreme Court as recently as 2003. *See Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003).

Hamilton argues that Interrogatory No. 1's use of the words "substantial cause" as the required standard for causation was incorrect. We agree. Given the aforementioned text of Rogers, it is clear that the causation instruction given by the trial court was an erroneous one. Nothing within that case suggests that a plaintiff must show "substantial cause" to prevail in a FELA case. Indeed, if anything, it holds exactly the opposite. A similar instruction was rejected as error in *Denton v. Southern Ry. Co.*, 854 S.W.2d 885 (Tenn. Ct.App.1993). There, the Tennessee Court of Appeals held that the trial court's instruction that the defendant was liable to the plaintiff only to the extent that its negligence was a "substantial contributing factor" to the plaintiff's injuries was reversible error because "the employee's burden to prove causation is slight." *Id.* at 888; *see also Parker v. Atchison, T. & S.F. Ry. Co.*, 263 Cal.App.2d 675, 678, 70 Cal.Rptr. 8, 10 (Cal.Ct.App.1968) ("The negligence of the employer need not be the sole cause or even a substantial cause of the ensuing injury."); *Snyder v. Chicago,*

*R.I. & P.R. Co.*, 521 S.W.2d 161, 165 (Mo. Ct.App.1973) ("In a conventional case of actionable negligence, the conduct causing harm to another must be a substantial factor in bringing about the injury. In a FELA action, on the other hand, only slight negligence need be shown, so that the risk of non-persuasion is much less than required for recovery in an ordinary negligence action."); *Cwick v. Great Lakes Dredge & Dock Co.*, 167 A.D.2d 962, 962, 562 N.Y.S.2d 302, 303, (N.Y.App.Div.1990) ("[T]he court denied each request and charged that any negligent act is a proximate cause if a defendant's conduct is a 'substantial factor' in bringing about the harm.... That charge is appropriate for ordinary negligence but not for Jones Act liability."); *McKillip v. Union Pac. R. Co.*, 11 Wash.App. 829, 525 P.2d 842, 844 (1974) ("The negligence of the employer need not be even a substantial cause of the ensuing injury.").

■■■■■ Accordingly, the question becomes whether the error here is of such a prejudicial nature that it merits a new trial. "In this jurisdiction it is a rule of longstanding and frequent repetition that erroneous instructions to the jury are presumed to be prejudicial; that an appellee claiming harmless error bears the burden of showing affirmatively that no prejudice resulted from the error." *McKinney v. Heisel*, 947 S.W.2d 32, 35 (Ky.1997). "It is only in a case which is clear and free of all doubt on the point that an instruction which is erroneous can be said by the court to have been without prejudicial effect on the minds of some of the jurors." *Southeastern Greyhound Lines v. Buckles*, 298 Ky. 681, 684, 183 S.W.2d 965, 966 (1944). We also note that when we "cannot determine from the record that the verdict was not influenced by the erroneous instruction, the judgment will be re-

versed." *Prichard v. Kitchen,* 242 S.W.2d 988, 992 (Ky.1951).

■ CSX argues that, even assuming that Interrogatory No. 1 was erroneous, Hamilton is not entitled to a new trial because the instructions, as a whole, correctly advised the jury of the law. "Where an instruction, taken as a whole, fairly and properly expresses the law applicable to the case, no just ground for complaint exists, even though an isolated or detached clause or expression is in itself inaccurate or incomplete." *Speith v. Helm,* 301 Ky. 451, 455–56, 192 S.W.2d 376, 378 (1946). As CSX further indicates, this view was also set forth by the Sixth Circuit Court of Appeals in *Tyree v. New York Cent. R. Co.,* 382 F.2d 524 (6th Cir.1967), a case relied upon by both parties and another FELA action in which jury instructions were in issue. Specifically, the Court there stated:

> In considering the correctness and adequacy of a charge to the jury, it should be taken as a whole and read in its entirety; that is, each instruction must be considered in connection with others of the series referring to the same subject and connected therewith, and if, when taken together, they properly express the law as applicable to the particular case, there is no just ground of complaint, even though an isolated and detached clause is in itself inaccurate, ambiguous, incomplete, or otherwise subject to criticism.

*Id.* at 527, quoting 53 *Am.Jur. Trial* § 842.

CSX points to the definition of "proximate cause" contained in "Instruction No. 2" as evidence that the instructions set forth the *Rogers* standard for causation. That definition states that "proximate cause":

> As used in these Instructions and as applicable in Federal Employers' Liability Act cases, means that cause which in continuous and unbroken sequence, un-

interrupted by some other intervening cause, has in whole or in part produced or has contributed towards producing the injury, and but for that cause in whole or in part, the injury would not have happened. The element of time and space is not a part of the definition of proximate or contributing proximate cause and is only material insofar as it shows or fails to show causation.

CSX argues that, as this instruction contains the "in whole or in part" language required by *Rogers,* no error can be found here. We disagree.

■ Even after considering the instructions as a whole—particularly Instruction No. 2—we believe that the "substantial cause" language in Interrogatory No. 1 was such a fundamentally incorrect statement of the law of causation in FELA cases that we cannot say that the instructions fairly and properly expressed the law applicable to the case. Moreover, while the trial court did include the "in whole or in part" language required by *Rogers* in Instruction No. 2, it immediately disregarded it and, in all probability, negated it in Interrogatory No. 1 with the "substantial cause" language. As noted by the Sixth Circuit Court of Appeals in *Tyree,* "a reviewing court should not pick out one erroneous paragraph of a long charge and reverse upon it, *if, upon consideration of the entire charge, it appears that the jurors were correctly instructed as to the applicable law in such manner as to leave no confusion in their minds." Id.,* quoting *Spaeth v. United States,* 232 F.2d 776, 777 (6th Cir.1956) (Emphasis added). Even if we were to assume that the "proximate cause" definition in Instruction No. 2 were an appropriate one, "[a] correct instruction will cure the error in another *only where the instructions, as a series, state the law correctly, and it is evident that no harm has been done by the errone-*

*ous instruction."* *Id.,* quoting *Sessoms v. Union Savings & Trust Company,* 4 Ohio Misc. 172, 338 F.2d 752, 758 (6th Cir.1964) (Emphasis added).

Here, we are simply not convinced that—after reviewing the instructions as a whole—the jury was appropriately instructed as to causation so that no confusion as to the applicable standard of law was present in their minds. While the jury instructions did include the "in whole or in part" language from *Rogers,* we simply do not believe that said language was emphasized enough throughout the charge to negate the effects of the "substantial cause" language in Interrogatory No. 1. Indeed, the language is instead buried among more traditional common law causation text before being ignored entirely by Interrogatory No. 1. Consequently, we do not believe that the causation elements of FELA and *Rogers* were appropriately placed before the jury. *See Parker,* 263 Cal.App.2d at 680–81, 70 Cal.Rptr. at 12. Put another way, it is simply not evident that the instruction was harmless; indeed, the fact that the jury answered Interrogatory No. 1 in favor of CSX strongly suggests otherwise.[2] "[S]ince Congress has deliberately established a more protective principle for railroad employees than that of the common law, it is reversible error for a judicial charge to fail to employ and emphasize both the 'in whole or in part' causal language of the statute and the interpretative language of the Supreme Court in the *Rogers* case." *Hausrath v. New York Cent. R. Co.,* 401 F.2d 634, 638 (6th Cir.1968).

Considering the facts here under the standards set forth above, we believe that CSX has failed to adequately demonstrate that no prejudice resulted from the erroneous causation instruction, and we cannot determine a lack of prejudice from our own review of the record. Accordingly, we find it necessary to reverse the judgment of the trial court and remand for a new trial because "where there is a substantial likelihood the jury was confused or misled by the instructions, reversal is required." *City of Middlesboro v. Brown,* 63 S.W.3d 179, 182 (Ky.2001), quoting *McKinney,* 947 S.W.2d at 35–36; *see also Drury v. Spalding,* 812 S.W.2d 713, 717 (Ky.1991).

We further note that, in our view, the language of Interrogatory No. 1 and Instruction No. 2 both adhere too closely to the language of traditional "proximate cause" negligence instructions and should be avoided in the future, given that FELA and *Rogers* depart from traditional common-law tests of proximate causation. *See generally DeLima v. Trinidad Corp.,* 302 F.2d 585 (2nd Cir.1962); *Page v. St. Louis Southwestern Ry. Co.,* 312 F.2d 84 (5th Cir.1963). Indeed, even a reference to "proximate cause" in general should be avoided. *See Hausrath,* 401 F.2d at 637–38; *Tyree,* 382 F.2d at 529; *Collins v. Mercury S.S. Co., Inc.,* 549 S.W.2d 213, 216–17 (Tex.App.1977). On remand, we believe that any instruction given as to causation should more closely reflect the U.S. Supreme Court's language in *Rogers,* given that this decision most prominently reflects that court's views on how causation in FELA cases should be considered. *See Summers v. Missouri Pacific R.R. System,* 132 F.3d 599, 607 (10th Cir.1997) ("A jury instruction containing both the

---

**2.** We also note that Interrogatory No. 1 contains no language referring the jurors back to the definition of "probable cause" contained within Instruction No. 2 or even making a reference to "probable cause" in general. This causes us to further question any cura-

tive effect that Instruction No. 2 might have had. For reasons noted below, we also question the trial court's use of the term "proximate cause" in its instructions in the first place.

statutory language and the explanatory language of *Rogers* is certainly the clearest articulation of the appropriate causation standard and presents the preferable approach in the future."); *Parker,* 263 Cal. App.2d at 678, 70 Cal.Rptr. at 10 ("[T]he plaintiff in an F.E.L.A. case is entitled to an instruction on causation which best connotes the controlling spirit of *Rogers.*").

Given that our findings here merit a new trial, we can deal more briefly with the remaining issues raised by Hamilton. He next tenders a more general argument that the remaining jury instructions were confusing and misleading to the advantage of CSX. Even assuming, however, that those instructions were erroneous, we cannot say conclusively that they were prejudicial given that the jury's verdict was based solely upon Interrogatory No. 1 and failed to even touch upon such considerations as Hamilton's possible contributory negligence, which is discussed in Instruction No. 4, Instruction No. 5, and Interrogatory No. 2. Consequently, we cannot say that any errors in the remaining instructions were prejudicial to the extent that they would provide separate grounds for reversal and remand. This is not to say, however, that those instructions do not cause us some concern. For example, Instruction No. 4 is replete with references to "proximate cause," which—as we noted above—should be avoided in FELA cases. We also note that Hamilton's contention that the instructions, as a whole, skew in favor of CSX is not without some merit. Consequently, on remand, the instructions in question should be reexamined with our conclusions in mind.

■ Hamilton next claims that the trial court erred in refusing to allow him to introduce into evidence a number of documents that had been provided in discovery by CSX. These documents—over 8,000 in total—purportedly were prepared by a CSX committee to investigate the ergonomics of the job held by Hamilton. According to Hamilton, the documents also "provided recommendations regarding making the workplace safe so as to avoid injury such as the cumulative trauma experienced by the Plaintiff" and proved that CSX "was aware of the problem and potential for injury to their employees as a result of cumulative trauma." He consequently contends that the documents were relevant to the litigation in that they provided evidence that CSX was aware of a risk of cumulative trauma injuries to its employees, yet failed to do anything about it.

As noted by CSX, the trial court entered a pre-trial order on October 22, 2003 requiring witness and exhibit lists to be filed before March 12, 2004, and it notified the parties that they would not be allowed to use a witness or exhibit that had not been listed without leave of court. On January 7, 2005, Hamilton submitted a supplemental witness and exhibit list on which he set forth 45 exhibits. Number 31 on that list was a collective reference to "Bate stamped documents number 1 to 8214." Notably, Hamilton—with the exception of one document—failed to specify which of those documents he intended to use at trial. Counsel for CSX contends—and Hamilton does not dispute—that, prior to trial, he requested that Hamilton identify which of the 8,214 documents he intended to use. Despite apparently agreeing to do so, Hamilton failed to comply with this request.

At trial, Hamilton attempted to introduce some of the documents in question through the trial testimony of Dr. Tyler Kress. CSX subsequently objected because the documents had not been specifically identified. The trial court sustained the objection, finding that, in accordance with its pre-trial order, the documents

could not be used because Hamilton had failed to give proper notice to CSX of which particular items he intended to use.

It is well-established that the question of whether or not a party has been put at an unfair advantage through the failure of another party to make appropriate pre-trial disclosures is left to the sound discretion of the trial court. *Collins v. Galbraith,* 494 S.W.2d 527, 530 (Ky.1973). Given that the documents in question were over 8,000 in number, we do not believe that the trial court abused its considerable discretion in refusing to allow Hamilton to introduce individual items from those documents when they were not specifically disclosed to CSX prior to trial. Consequently, Hamilton's argument is rejected.[3]

We finally turn to Hamilton's contention that the trial court erred in refusing to allow him to introduce documentary evidence relating to CSX's profits and profit margin at the Goff Loadout Facility. Hamilton argues that these documents "were not to be used to show the profits of the Defendant Railroad Corporation as a whole but rather to show the enormous amount of profits as produced by this specific facility," and that the trial court's refusal to allow them to be introduced into evidence limited his proof as to CSX's motivation for failing to take remedial measures at the facility.

CSX sets forth in response that it supplied Hamilton with information concerning the number of cars loaded and pulled out of the Goff facility, but it redacted from those documents its charges and profits. CSX argued to the trial court that such information is proprietary and would put it at a competitive disadvantage with its customers and other railroads if it were to be released into the public realm.

As a general rule, we review a trial court's evidentiary rulings for abuse of discretion. *Goodyear Tire and Rubber Co. v. Thompson,* 11 S.W.3d 575, 577 (Ky. 2000). Our courts have long held that evidence of a party's financial status should be excluded at trial because of the danger of prejudice that such evidence creates. *See Rockwell Intern. Corp. v. Wilhite,* 143 S.W.3d 604, 630–31 (Ky.App. 2003). Indeed, our predecessor court—in another FELA case—found improper a plaintiff's effort to make the wealth of the corporate defendant an issue. *Louisville & N.R. Co. v. Crow,* 32 Ky.L.Rptr. 1145, 107 S.W. 807, 808 (1908). While it appears from the briefs and the record that Hamilton's attempt to introduce this evidence at trial was not directly aimed towards inciting passion and prejudice in the jury, the danger that such would occur was certainly a possibility and, accordingly, we cannot say that the trial court abused its discretion in not allowing it to be presented to the jury. Accordingly, Hamilton's argument to the contrary is rejected.

The judgment of the Pike Circuit Court is hereby reversed, and this case is remanded for further proceedings consistent with this opinion.

ALL CONCUR.

---

**3.** Given our ruling, there is no need for us to consider the merits of Hamilton's related motion for inclusion of additional records in the certified record on appeal.